**CITY OF PHILADELPHIA**

**v.**

**MORTON SALT COMPANY et al.**

See also 3 Cir., 385 F.2d 122.

**CITY OF BALTIMORE**

**v.**

**MORTON SALT COMPANY et al.**

**STATE OF NEW YORK**

**v.**

**MORTON SALT COMPANY et al.**

**TOWN OF AMHERST and Town of Tonawanda**

**v.**

**MORTON SALT COMPANY et al.**

**BOARD OF COUNTY ROAD COMMISSIONERS OF the COUNTY OF WAYNE**

**v.**

**MORTON SALT COMPANY et al.**

Civ. A. Nos. 33781, 42048, 40919, 41405, 37160 and related cases 37159, 37161–37169, 37173, 37174.

United States District Court
E. D. Pennsylvania.

Sept. 13, 1968.

David Berger, Philadelphia, Pa., for plaintiffs.

Donald Brown, Israel Packel, Philadelphia, Pa., for defendant Cayuga Rock Salt Co.

## OPINION AND ORDER

JOSEPH S. LORD, III, District Judge.

Before us is defendant Cayuga's motion to have certain antitrust actions against it dismissed for improper venue.

One action is a class action instituted on July 1, 1963 by the City of Philadel-phia. Cayuga argues that venue with respect to the intervenors in that action is improper and urges us to take appropriate action. The identical issue, involving the identical parties, has already been decided adversely to Cayuga by our late brother Judge Allan K. Grim. City of Philadelphia v. Morton Salt Co., 248 F.Supp. 506 (E.D.Pa.1965). We are here asked to reconsider that ruling. However, we are in complete agreement with that decision, and the defendant's motion for reconsideration will be denied. See also Hormel v. United States, 11 F.R.D. 376 (S.D.N.Y.1951).

Defendant has also asked us to dismiss for improper venue the action of the State of New York instituted on August 10, 1966, and the actions by the Towns of Tonowanda and Amherst which were started on October 24, 1966.

We have previously held that the general venue provisions of the Judicial Code, and in particular 28 U.S.C.A. §§ 1391(c) and 1392(a) are complementary to the special venue provision of the Clayton Act and therefore can be looked to in determining venue in antitrust actions. State of New York v. Morton Salt Co., 266 F.Supp. 570 (E.D.Pa.1967).

However, "whether we address ourselves to the Clayton Act criterion of where defendant 'transacts business' or the general venue statute test of 'is doing business,' the result is the same. Both require 'more than a few isolated and peripheral contacts with the judicial district.'" Id. at 575.

The question then for us is whether Cayuga has a sufficient quantum of contacts with the Eastern District to satisfy the venue requirements.

Cayuga is a foreign corporation which has never registered to do business in Pennsylvania, has owned no real estate or other assets here, and has no office space or employes here. All orders for its products are received by telephone in New York, processed there, and then shipped into Pennsylvania.

In the years shown below Cayuga made direct sales and deliveries in the respective districts of Pennsylvania in the following amounts:

| District | 1964 (10 mos.) | 1965 | 1966 (10 mos.) |
|---|---|---|---|
| Eastern | $23,002.00 | $24,173.00 | $24,828.50 |
| | 4,374 tons | 4,377 tons | 4,589 tons |
| Middle and Western | $26,204.37 | $34,867.73 | $33,521.42 |
| | 1,845 tons | 4,352 tons | 2,726 tons |

Sales of Cayuga in the Eastern District comprised 1.09% of total tonnage sold in 1964, 9/10 of 1% in 1965, and 1.6% in 1966.

These data demonstrate to us that Cayuga has more than a few isolated and peripheral contacts with the Eastern District. Indeed, it carries on a continuous course of business which certainly can not be dismissed as insubstantial. "The mere fact that neither defendant is registered to do business in Pennsylvania, nor maintains any offices, telephones, real estate or resident agents here, is not dispositive, per se, of the issue whether they did, in fact, transact business here in the usual sense. * * * In this age of ever-changing technology, the substitution of the long distance telephone call for the visit of the familiar drummer of the past has rendered many companies subject to the reach of Section 12 of the Clayton Act. * * *" School Dist. of Philadelphia v. Harper & Row Publishers, Inc., 267 F.Supp. 1006, 1009 (E.D.Pa.1967).

Nor do we think that Cayuga by making out-of-state f. o. b. shipments can be said not to be transacting business in the Eastern District. See B. J. Semel Associates v. United Fireworks Mfg. Co., 122 U.S.App.D.C. 402, 355 F.2d 827 (1965).

Moreover, if we consider the relationship of Cayuga with Highway Materials, Inc., we are doubly certain that venue as to Cayuga is proper. For in addition to the direct sales made by Cayuga that were outlined above, Cayuga has made substantial sales into the Eastern District through its authorized distributor, Highway.

1964 — 2,480 tons $37,129
1965 — 2,759 tons $37,616
1966 — 1,266 tons $13,013

And an analysis of the relationship of Highway and Cayuga would belie any notion that they were independent of each other. In fact, not to consider the sales of Highway as the "doing of business" by Cayuga would be blinding ourselves to reality. Clearly, Highway was just another channel through which Cayuga did business in Pennsylvania.

Cayuga admits that a substantial portion of its business was done through a distributorship arrangement, and its letters to the State of Pennsylvania demonstrate its attempt to have Highway recognized as its "authorized distributor." This and other circumstances not the least of which are the control Cayuga had over Highway's business decisions, and the personal relationships that certain key employes have with both companies, indicate clearly to us that the business of Highway must be viewed as the business of Cayuga. While we have no doubt that Cayuga's direct business alone is sufficient to support venue here, the necessary addition of that done through Highway simply fortifies our conclusion that Cayuga's motion must be denied.

It is so ordered.