**Mare PAYNE, Plaintiff,**

v.

**MARKETING SHOWCASE, INC., etc., et al., Defendants.**

**No. 84 C 6645.**

United States District Court, N.D. Illinois, E.D.

Feb. 25, 1985.

Allen C. Engerman, Carlo E. Poli, Jeffrey D. Jacobs, Engerman, Erlich, Jacobs & Berman, Chicago, Ill., for plaintiff.

Eric A. Oesterle, Peter J. Valeta, Charlotte M. Stone, Sonnenschein, Carlin, Nath & Rosenthal, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

DECKER, Senior District Judge.

On August 2, 1984, Mare Payne ("Payne") filed a ten-count complaint against Marketing Showcase, Inc. ("MSI"), Charles Offset Co. ("COC"), Charles Communications Co., Inc. ("CCC"), and four officers of these corporations. The first three counts allege violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(a), (c), and (d). The remaining counts allege pendent state law claims. The case is before the court on defendants' motion to dismiss the complaint for improper venue under Fed.R.Civ.P. 12(b)(3) or, in the alternative, to transfer this case pursuant to either 28 U.S.C. § 1406(a) or § 1404(a).

### I. *Factual Background*

Payne was employed by MSI as a commissioned salesperson from March, 1982 to

March, 1984. During this time, she lived in Chicago. MSI procures advertisers for nationwide coupon advertising and advertising inserts. COC prints these coupons and inserts and then distributes them to newspapers or other customers. CCC is purportedly the holding company of MSI and COC.

Payne was paid on a net commission basis. Under her employment contract, which was expressly governed by New York law, MSI deducted certain charges, such as printing costs, from her commissions. The gist of Payne's complaint is that all of the defendants conspired to defraud and actually defrauded her of the true amount of her commissions by falsely inflating the deductible charges. The complaint alleges that defendants intentionally misrepresented to Payne the amount of these charges either in person, by mail, or by wire while she was in Chicago.

Payne was a resident of New York when she brought this action. MSI, COC, and CCC are New York corporations. It is undisputed that MSI is licensed to do business in Illinois and transacts business in this district. Three of the individual defendants reside in New York, and one resides in New Jersey. In addition, the individual defendants submitted affidavits to the effect that they have little, if any, contact with Illinois and that all relevant documents are located in New York. Many of the principal witnesses reside in New York also.

Plaintiff contends that venue is proper in the Northern District under 18 U.S.C. § 1965(a) and 28 U.S.C. § 1391(b). Defendants move to dismiss the complaint for improper venue under Fed.R.Civ.P. 12(b)(3) or, in the very least, to transfer this case to the Southern District of New York in the interest of justice under 28 U.S.C. § 1406(a). If venue is proper here, defendants move to transfer the case pursuant to 28 U.S.C. § 1404(a).

## II. *Discussion*

The purpose of statutory venue provisions "is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Leroy v. Great Western United Corp.*, 443 U.S. 173, 183–84, 99 S.Ct. 2710, 2716–17, 61 L.Ed.2d 464 (1979) (original emphasis). Venue must be properly laid as to each defendant. *Eaby v. Richmond*, 561 F.Supp. 131, 140 n. 2 (E.D.Pa.1983). In addition, where multiple causes of action are joined, venue must be proper as to each one. *International Patent Development Corp. v. Wyomont Partners*, 489 F.Supp. 226, 230 (D.Nev.1980). Although there is a split of authority on the question, this court follows the rule that where, as here, a defendant challenges venue under Fed.R. Civ.P. 12(b)(3), the plaintiff has the burden of proving that venue is proper in this district. *Pfeiffer v. International Academy of Biomagnetic Medicine*, 521 F.Supp. 1331, 1336 (W.D.Mo.1981); *see Grantham v. Challenge-Cook Bros., Inc.*, 420 F.2d 1182, 1184 (7th Cir.1969).

### A. *Venue Under 18 U.S.C. § 1965(a)*

Section 1965(a), the venue provision for civil RICO actions, provides that a suit may be instituted in any district where a defendant "resides, is found, has an agent, or transacts his affairs." *Id.*[1] Although this section was intended to liberalize existing venue provisions, plaintiff must show that there is venue over each defendant due to his own contacts with the district as opposed to those of a co-defendant. *Farmers Bank v. Bell Mortgage Corp.*, 452 F.Supp. 1278, 1281 (D.Del.1978).

MSI is clearly "found" and "transacts [its] affairs" here for purposes of § 1965(a). The only basis for venue that Payne raises with respect to the other defendants is that they have an agent, namely MSI, in this district. Payne reasons that because defendants constituted an enterprise to defraud her, each of them became

---

1. Section 1965(a) was patterned after the venue provisions of the antitrust laws. *King v. Vesco,*

342 F.Supp. 120, 122 (N.D.Cal.1972).

an agent of the other. This circular logic is flawed.

First, this court long ago rejected the co-conspiratorial theory of venue. *Commonwealth Edison Co. v. Federal Pacific Electric Co.*, 208 F.Supp. 936, 941 (N.D.Ill. 1962). Payne must prove that each defendant has engaged in some significant or substantial act pursuant to the RICO conspiracy in this district. *Farmers Bank*, 452 F.Supp. at 1281; *Eaby*, 561 F.Supp. at 140 n. 2. Second, the first court to construe the RICO venue provision held that the term "has an agent," like its antitrust counterpart, does not apply to corporate defendants. *King v. Vesco*, 342 F.Supp. 120, 123 (N.D.Cal.1972). Thus, since Payne does not allege that any of the individual defendants has an agent in this district, the concept of agency is of no help to her in this case.

Even if the court discounts the sound reasoning of *King*, plaintiff still has not sufficiently shown that MSI is an agent of the other defendants. Payne's assertion that MSI procures advertisers for inserts and coupons printed by COC does not establish an agency relationship among all defendants. *See Westinghouse Electric Corp. v. Rio Algom Ltd.*, 448 F.Supp. 1284, 1301–03 (N.D.Ill.), *aff'd in part and rev'd in part on other grounds sub nom. Westinghouse Electric Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311 (7th Cir.), *cert. denied*, 439 U.S. 955, 99 S.Ct. 353, 58 L.Ed.2d 346 (1978). Similarly, while plaintiff alleges that all of the corporations are affiliated, she has not shown that COC and CCC control the daily business operations of MSI to such an extent that its actions may be imputed to them for venue purposes.

■ Although plaintiff did not rely on the other terms in § 1965(a), the court will briefly examine them to see if venue is proper. First, for a corporate defendant to be "found" in this district, it must be present here by its officers and agents carrying on the business of the corporation. *Van Schaick v. Church of Scientology, Inc.*, 535 F.Supp. 1125, 1133 (D.Mass.1982). The court already concluded that Payne

has failed to show that MSI is an agent of COC and CCC. Furthermore, construing the Clayton Act venue provision after which § 1965(a) was modeled, this court defined the word "found" as "presence and 'continuous local activities' within the [d]istrict." *E.g., C.C.P. Corp. v. Wynn Oil Co.*, 354 F.Supp. 1275, 1278 (N.D.Ill.1973). Because plaintiff has not shown that COC, CCC, and the individual defendants carry on their business in this district to any significant degree, none of them is "found" here for RICO venue purposes.

■ Finally, the term "transacts his affairs" is considered to be equivalent to the term "transacts business" in the anti-trust statute. *E.g., Bulk Oil (USA) Inc. v. Sun Oil Trading Co.*, 584 F.Supp. 36, 39 (S.D.N.Y.1983). This court held that a corporation "transacts business" within a forum when "substantial business activity is done within the forum with continuity of character ...." *C.C.P. Corp.*, 354 F.Supp. at 1278. Payne's conclusory allegation that COC does business in this district falls short of the required standard. With respect to the individual defendants, "transacts his affairs" refers to their personal affairs, not the affairs they may have transacted on behalf of their employer. *Bulk Oil*, 584 F.Supp. at 39. Plaintiff's information and belief notwithstanding, the affidavits of the individual defendants clearly show that they did not transact their own affairs in this district. *Cf. King v. Vesco*, 342 F.Supp. at 123–24.

In sum, plaintiff stretches § 1965(a) too far in her attempt to manufacture venue over COC, CCC, and the individual defendants solely through the connection that MSI has with this district. Plaintiff must provide substance to her claim of an agency relationship before she may use MSI as a magnet to pull all other defendants to this district. The court holds that venue is improper as to COC, CCC, and the four individual defendants under 18 U.S.C. § 1965(a).

#### B. *Venue Under § 1391(b)*

Because 18 U.S.C. § 1965(a) is not intended to be exclusive, the court must next

inquire whether this action can be maintained under the general venue statute, 28 U.S.C. § 1391(b). *Van Schaick*, 535 F.Supp. at 1133 n. 6. Since all of the defendants do not reside in this district, the sole issue is whether "the claim arose" here. 28 U.S.C. § 1391(b). Payne argues that, because the RICO injuries caused by the defendants occurred in this district, venue is proper here. On the other hand, defendants claim that the "weight of the contacts" overwhelmingly points to the Southern District of New York.

In *Leroy v. Great Western United Corp.*, 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979), the Supreme Court concluded that:

> the broadest interpretation of the language of § 1391(b) that is even arguably acceptable is that in the unusual case in which it is not clear that the claim arose in only one specific district, a plaintiff may choose between those ... districts that with approximately equal plausibility—in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but *not* the plaintiff)—may be assigned as the locus of the claim.

*Id.* at 185, 99 S.Ct. at 2717 (original emphasis) (footnote omitted). As this court has stressed, "[w]here 'the claim arose' should be ascertained by advertence to events having operative significance in the case, and a common sense appraisal of the implications of those events for accessibility to witnesses and records." *Robbins v. First American Bank*, 514 F.Supp. 1183, 1192 (N.D.Ill. 1981) (quoting *Lamont v. Haig*, 590 F.2d 1124, 1134 (D.C.Cir.1978)). In this case, convenience to all of the litigants, including plaintiff, and accessibility to the major witnesses and relevant evidence appear to favor venue in New York. Nevertheless, plaintiff insists that under the "weight of the contacts" test, venue is proper in this district since it is the place of injury.

In recent cases, this court has followed the cryptic analysis of the Supreme Court in *Leroy* rather than applying the "weight of the contacts" test. *See Medical Emergency Service Associates v. Duplis*, 558 F.Supp. 1312, 1314–16 (N.D.Ill.1983); *Robbins*, 514 F.Supp. at 1192–93. Though this shift in analysis may be an exercise in semantics, *Leroy* accorded greater weight to the convenience of the defendant and the witnesses than did the "weight of the contacts" test. A common sense appraisal of the considerations embodied in *Leroy* indicates that the locus of Payne's claim is New York, not Illinois. This is not the unusual case referred to in *Leroy* that gives rise to multiple candidates for venue.

Contrary to plaintiff's wishes, the place of the injury [2], while significant, is not determinative. *Soper v. Simmons International, Ltd.*, 582 F.Supp. 987, 992 (N.D.N.Y.1983). This is especially true with respect to RICO and anti-trust claims, which are often not susceptible to such a simplistic rationale. *See Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.*, 291 F.Supp. 252, 260 (E.D.Pa.1968). In her RICO claims, Payne contends that all of the defendants combined to form an "association in fact" enterprise to defraud her through a pattern of racketeering activity under § 1962(c), invested the wrongfully diverted funds in the enterprise under § 1962(a), and conspired to defraud her under § 1962(d). It is clear from these allegations that the heart of plaintiff's RICO claims is the association and conspiracy to defraud her. *Cf. Ohio-Sealy Mattress Manufacturing Co. v. Kaplan*, 429 F.Supp. 139, 141 (N.D.Ill. 1977); *ABC Great States, Inc. v. Globe Ticket Co.*, 310 F.Supp. 739, 743 (N.D.Ill. 1970).

Any scheme to defraud Payne of her commissions must have taken place in New York. MSI, COC, and CCC are New York corporations with offices in New York City.

---

**2.** For the sake of argument, the court may assume that Payne sustained her RICO injuries in this district.

The defendant officers work and live in New York, with the exception of one who lives in New Jersey, and have minimal contact with Illinois. All pertinent correspondence and wire communications with plaintiff originated in New York. Any alleged diversion of funds and subsequent investment occurred in New York. Most of the principal witnesses live in New York. The affidavits submitted by defendants make clear that all relevant documents are located in New York. Finally, plaintiff resided in New York when she filed this suit.[3]

Thus, because no defendant except MSI has a significant connection with this district, the fact that plaintiff may have suffered her losses here does not make venue proper here. The convenience of both the litigants and the witnesses, access to the relevant proof, and the nature of the case convince the court that the locus of the claim is New York. Rather than dismiss this case, however, the court concludes that the interest of justice warrants transferring this action to the Southern District of New York where plaintiff's claim arose and where venue is proper as to all parties. 28 U.S.C. § 1406(a)[4].

Payne requests the court to transfer venue on the condition that the decision in *Haroco, Inc. v. American National Bank and Trust Co.*, 747 F.2d 384 (7th Cir.1984), *cert. granted*, — U.S. —, 105 S.Ct. 902, 83 L.Ed.2d 917 (1985), declining to impose a "racketeering enterprise injury" requirement on civil RICO plaintiffs, be followed in the Southern District of New York. This unusual request may reveal plaintiff's motivation for bringing suit here, since the Second Circuit recognizes a "racketeering enterprise injury" requirement in RICO actions. *See Sedima, S.P. R.L. v. Imrex Co.*, 741 F.2d 482 (2d Cir. 1984), *cert. granted*, — U.S. —, 105 S.Ct. 901, 83 L.Ed.2d 917 (1985). Plaintiff's request is moot, however, because the Supreme Court has granted certiorari in both *Haroco* and *Sedima* and will soon resolve the current split between the circuits.

### III. *Conclusion*

For the foregoing reasons, the court finds that venue is improper in this district. In the interest of justice, the court transfers this case to the United States District Court for the Southern District of New York.

---

3. In addition, Payne's employment contract was expressly governed by New York law. Although this factor is less important than the others, a number of Payne's pendent claims require the interpretation of the contract. As the Supreme Court observed in *Leroy*, a federal judge sitting in New York is better qualified to construe New York law. 443 U.S. at 186, 99 S.Ct. at 2718.

The court intimates no opinion as to any of the other choice of law questions.

4. Even if venue were proper here, the court would transfer the case "[f]or the convenience of parties and witnesses, [and] in the interest of justice" to the Southern District of New York pursuant to 28 U.S.C. § 1404(a).